Adam G. NUNEZ, Plaintiff-Appellant,

v.

The SUPERIOR OIL COMPANY, Defendant-Appellee.

No. 80–3243.

United States Court of Appeals, Fifth Circuit. Unit A

May 8, 1981.

Adam G. Nunez, pro se.

Liskow & Lewis, Lawrence P. Simon, Jr., Robert T. Jorden, Lafayette, La., for defendant-appellee.

Before GOLDBERG, AINSWORTH and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge.

The issue before us can be briefly stated: did the district judge err in directing a verdict against a mineral lessor in his suit for cancellation of a mineral lease because of a lengthy delay by the lessee in paying royalties? Its resolution, however, requires us to review in detail the four volumes of testimony and the exhibits introduced during a three-day trial. The standard for sufficiency of the evidence is the familiar federal one: a verdict may not be directed if there was substantial evidence from which a reasonable juror might reach a contrary decision. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). Jurisdiction being based on diversity, we follow Louisiana law in applying this standard to the evidence. Having done so, we affirm the judgment.

In an earlier opinion in which we set forth the details leading up to this litigation, we reversed a summary judgment in favor of the defendant because there were genuine issues of material fact that precluded summary disposition. *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir. 1978). Once all the evidence was before the court, however, the judge's decision on a motion for a directed verdict was governed by a different standard. No longer was the question simply whether there were disputed issues that might affect the result. Instead the trial judge was entitled to weigh the evidence to determine whether it sufficed to support a verdict. "[T]he reversal of summary judgment does not foreclose the right and the imperative duty of the District Judge to test the case against the actual evidence adduced at every stage of the trial. Nor is it a forecast that on remand the case must go to the jury. That depends upon the actual proof made and such proof may fall way short." *Braniff v. Jackson Ave.—Gretna Ferry, Inc.*, 280 F.2d 523, 529 (5th Cir. 1960). *See Robbins v. Milner Enterprises, Inc.*, 278 F.2d 492, 496–97 (5th Cir. 1960); *E. C. Ernst, Inc. v. General Motors Corp.*, 537 F.2d 105, 108 (5th Cir. 1976). We review briefly what the totality of the evidence, construed most favorably to Nunez, showed.

Adam Nunez, whom we shall for convenience refer to as the father, and his son, Adam G. Nunez, each owned an undivided one-fourth interest in property located in Cameron Parish, Louisiana. The son had

inherited his interest from his mother. In 1961, they, together with their co-owners, leased the property to Superior Oil Company. Mineral production was obtained and royalties were being paid monthly to each lessor. On May 2, 1971, the father died. Thereafter his succession was opened and the son was appointed administrator. The son gave no notice to Superior but merely endorsed the royalty checks received from it "Adam G. Nunez" showing his capacity as administrator for the succession of his father.

In October, 1971, K. R. Richardson, a senior clerk employed by Superior who supervised the payment of royalties on production, noticed the endorsement. He ordered royalty payments to the father stopped, and sent the son a request for the customary succession documents that would establish the son's right as administrator to receive the royalties. Royalty payments to the son for the one-fourth interest held in his own name continued. Eventually, on December 14, 1971, the son sent Superior the documents necessary to establish his appointment as administrator. They were submitted to the company's counsel and he approved payment of the father's interest to the administrator of his succession. Richardson mailed Nunez a division order, which he received but did not execute or return to Superior, showing his representative capacity as administrator. On April 6, 1972, the son sent Superior a copy of the judgment of possession in the succession of his father placing him in possession of his father's property as sole heir and requested that Superior take whatever procedural steps were necessary to make all future payments of his father's royalties to him. When Superior's counsel received a copy of the judgment of possession, he sent a memorandum to Richardson approving the payment of the father's royalties to the son as sole heir upon execution of a division order. Richardson then forwarded a second division order to the son showing the son's ownership of the father's quarter interest. The son received it, but did not return it to Superior or communicate further with Superior about it.

Superior's evidence concerning division orders is uncontradicted save for Nunez's expressions of incredulity. It uses division orders for the purpose of accurate maintenance of its accounting records in order to assure the proper payment of royalties. An executed division order establishes that the royalty owner and Superior have agreed on the interest to be paid. However, Superior does not exact execution of a division order as a prerequisite to the payment of royalties. After a division order is mailed, it delays payment for a period of sixty to ninety days in the hope that the royalty owner will return the order properly signed. If the order is not returned, however, the payment is nevertheless released.

The clerical procedure used by Superior to accomplish the execution of division orders requires that at the time the order is forwarded to the lessor for his signature a tracer copy is placed in a special file called a tracer or tickler file. Superior maintained one such file for each state in which it held producing leases. A Superior employee examined the file between the fifteenth day and the end of every month for the purpose of reviewing unexecuted division orders outstanding for sixty days or more.

Superior's witnesses testified without contradiction that, if a division order was either executed and returned or the royalty owner objected to signing it, the tracer copy would be removed from the tickler file and an order would be entered for payments to be made. They also testified without contradiction that, if the division order had not been returned in sixty to ninety days, the tracer copy would then be removed from the tickler file and royalty payments on that property would likewise be made. Superior contends that the Nunez tracer was misfiled in the royalty file instead of being placed in the tracer file, and, as a result, it did not follow its usual procedure. Nunez protests that the jury should have been permitted to decide whether Superior deliberately withheld payments from him in order to exact execution of a division order.

When, in April, 1972, Superior received a copy of the judgment of possession in the father's succession, it was put on notice that the son no longer was to receive royalties as administrator of his father's succession, but had the right to them as owner of the one-quarter interest. Therefore, the royalties on the succession share were not released. Instead, after the ownership documents were approved, a new division order was mailed on June 15, 1972. On February 20, 1974, twenty months later, a copy of the division order was, the Superior testimony went, discovered misfiled in the royalty file rather than in the Louisiana suspense or tickler file. The son had not in the meanwhile demanded payment or put Superior in default. *See Nunez v. Superior Oil Co.*, 572 F.2d at 1123 & 1127 n.15. Superior immediately made a special payment to him by a check dated February 20, 1974, in the amount of $8,642.69 representing all the funds that had accrued to his account. It later paid him interest on these funds without any demand for interest from Nunez. Only after receiving Superior's check did Nunez demand cancellation of the lease.

■ Louisiana law, fully reviewed in our prior decision, *Nunez v. Superior Oil Co.*, 572 F.2d at 1122, requires the mineral lessee to pay production royalties promptly. The lessee's failure to do so is a breach of the lease, entitling the lessor to cancel it. If a lease violation results from an active breach, no notice of default is necessary. If, however, the failure to pay is a passive breach, the lessee must first give the lessor notice of default and an opportunity to remedy its violation.

■ A passive breach is regarded as an inadvertent and excusable failure to perform, which the royalty owner cannot convert into an active breach by knowingly allowing the time period to elapse. He must give the mineral lessee an opportunity to perform, called a notice of default, before demanding cancellation of the lease. Nunez contends that his April 6, 1972, letter constituted a "putting in default" or demand under Louisiana law. In our prior decision we held that the issue whether the letter amounted to a notice of default is a question of law for the court to decide and is not properly an issue for jury determination. *Nunez v. Superior Oil Co.*, 572 F.2d at 1127 n.15. The trial judge properly held in his earlier opinion on motions for summary judgment that the letter did not constitute a putting in default. Because Nunez gave Superior no notice of default, only an active breach of the lease would entitle him to cancellation.

■ An active breach results from failure to pay royalties for an appreciable length of time without justification. *See Bayou Bouillon Corp. v. Atlantic Richfield Co.*, 385 So.2d 834, 838 (La.App.1980). Such a breach is so inconsistent with the obligations of the mineral lessee as *ipso facto* to justify cancellation of the lease. Superior agrees implicitly that the delay in payments to Nunez was appreciable. It contends only that the evidence unfalteringly supports the trial judge's conclusion that it was "not without justification," a necessary circumlocution, for Superior does not pretend that the delay was justified.

■ The crux of the matter, then, is whether, considering all of the evidence in the light most favorable to Nunez, fair-minded jurors could have arrived at the conclusion that Superior's delay in payment was not justified. The Louisiana cases reviewed in our prior opinion support the conclusion we there stated: a clerical error in the context of otherwise reasonable conduct makes the delay not unjustifiable. *Nunez v. Superior Oil*, 572 F.2d at 1122; *Alvord v. Sun Oil Co.*, 271 So.2d 561, 567 (La.App.1972); *Hebert v. Sun Oil Co.*, 223 So.2d 897, 900 (La.App.1969).

Superior contends that the evidence presents an indisputable case of inadvertent misfiling in a system set up to guard against the very peril. Nunez finds the reasonableness of the clerical conduct a matter of dispute. He contends also that reasonable jurors could disbelieve the self-serving testimony claiming clerical misfiling and find that the so-called "clerical error" was merely a pretextual reason to

conceal the company's effort to coerce Nunez to execute a division order.

The trial judge's reasons for directing a verdict are in effect an adequate statement of the reasons why, had the case gone to the jury and a verdict for Nunez been returned, he would have been required to overturn it.

There is not the slightest evidence that Superior does not faithfully follow the [clerical] policy outlined above. There is no evidence that it attempts to coerce its royalty owners or has attempted to coerce plaintiff by withholding the payment of royalty. The available evidence establishes the exact opposite. Plaintiff has never executed a division order on the quarter-interest owned by him prior to the death of his father. Yet royalty has been paid by Superior and accepted by plaintiff on that quarter-interest without interruption since the lease became productive.

\* \* \* \* \* \*

Superior was servicing 13,000 to 14,000 royalty accounts at the time of this failure. There is no evidence of any other serious or extended failures, and no evidence that Superior's procedures were inadequate. Procedures, though adequate, are always subject to human error. We find that Superior's procedures were adequate, that the failure occurred through mistake and inadvertence, that it was not calculated or deliberate, that Superior corrected its mistake as soon as it became evident, and that Superior was not endeavoring to coerce its lessor-royalty owner, Adam G. Nunez.

\* \* \* \* \* \*

By his knowing silence plaintiff assured an extended delay in the payment of royalties, and gave strength to his demand for cancellation.

While the testimony indicates that there may have been correspondence between the parties not introduced in the record, nothing in the evidence shows that Superior demanded that Nunez sign the division order before it resumed payment or that, before he received the delinquent payments, Nunez ever communicated to Superior that he objected either to signing the order or to the delay in payments. The record does not support the possible inference that the testimony about misfiling was a pretextual reason for non-payment of royalties. Moreover, Mr. Nunez's testimony establishes that he had, in his law practice, negotiated mineral leases and that he had studied mineral law in law school. He was, therefore, obviously knowledgeable regarding industry practices. *See Bayou Bouillon v. Atlantic Richfield Co.*, 385 So.2d at 839 (factors to be considered in determining whether delay is justified include the lessee's motive, when and under what circumstances did the lessor seek or demand royalty payments and whether the lessor is knowledgeable about industry practices or is on an unequal footing with the lessee).

The Louisiana appellate courts are hesitant to cancel mineral leases for nonpayment of relatively small sums. *Bayou Bouillon v. Atlantic Richfield Co.*, 385 So.2d at 839. "It is a statistical fact that in sixteen reported Louisiana appellate cases over the past twenty-four years dealing with nonpayment of royalties, justification for nonpayment was found in ten. More significantly, in the most recent seven cases and over the past twelve years, justification was found in each case." *Id.* Although the delay in royalty payments lasted for an appreciable length of time, it was not without justification. Therefore, Superior's failure to make timely royalty payments did not constitute an active breach of the lease and Nunez is not entitled to have the lease cancelled. For these reasons we affirm the trial court's direction of a verdict as to the one-fourth interest inherited from Nunez's father.

 Nunez also sought cancellation of the lease as to the quarter interest owned by him before his father's death. Mineral leases are divisible for purposes of partial cancellation. *Fontenot v. Sunray Mid-Continent Oil Co.*, 197 So.2d 715, 720–21 (La. App.1967); *Sellers v. Continental Oil Co.*, 168 So.2d 435, 438 (La.App.1964). The evi-

dence is uncontroverted that, as to this interest, Superior has at all times performed its lease obligations. Therefore, Nunez is not entitled to a cancellation of the lease as to the quarter interest inherited from his mother.

Nunez raises a number of issues concerning evidentiary rulings. We have considered each of them and find them without merit. Our disposition of the merits makes it unnecessary for us to discuss Nunez's demand for punitive damages and attorney's fees.

Accordingly, the district court's judgment is **AFFIRMED**.