Henry MATTHEWS, Plaintiff-Appellant,

v.

ASHLAND CHEMICAL, INC., et al.,
Defendants-Appellees.

No. 84–3246.

United States Court of Appeals,
Fifth Circuit.

Sept. 16, 1985.

Russ M. Herman, New Orleans, La., Philip A. Gattuso, Gretna, La., Leonard A. Davis, New Orleans, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John J. Weigel, New Orleans, La., for Ashland Chemical.

Before RUBIN, RANDALL, and HIGGINBOTHAM, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The only issues on appeal in this complex personal injury suit are whether the district court erred, either in directing a verdict for

the defendants after both sides had rested, or in three evidentiary rulings during the trial. In an earlier appeal of this case, we held that the district court should not have entered a summary judgment and we remanded the case for trial of the disputed issues of fact. After remand, the case was bifurcated into separate trials, first on the merits, then, if the plaintiff prevailed, on damages. At the end of the trial on the merits, the jury deadlocked. With the consent of both counsel, the judge dismissed the jury. He then directed a verdict for the defendant. We affirm the district court's judgment, finding that the evidence was insufficient to warrant a verdict for the plaintiff by any reasonable juror. The evidentiary rulings complained of were either correct or harmless and, therefore, do not affect this result. The denial or reversal of a summary judgment does not necessarily mean that, when all of the evidence has been adduced, a reasonable juror might find for the plaintiff.

## I.

In this vigorously tried diversity case, Henry Matthews, a propane gas deliveryman employed by Amoco Oil Co., seeks to recover damages under the Louisiana law of negligence and strict liability for injuries he sustained while delivering propane gas at a warehouse leased and operated by Ashland Chemical, Inc. In relating the facts of this case, we construe all of the evidence presented at trial "with all reasonable inferences most favorable to" Matthews.[1]

Ashland used forklift trucks powered by cylinders of propane gas. When the cylinders were empty, Ashland's employees usually placed them on the loading dock outside Ashland's warehouse. On the day Matthews was injured, Ashland had ordered refills for three empty cylinders from Amoco, which sent Matthews to Ashland's warehouse to make the delivery. When Matthews arrived, he connected the hose from his delivery truck to one of the cylinders at the place where it had been left by

Ashland's employees. When he heard the propane begin to enter the cylinder, Matthews stepped over to an electric water cooler located just inside the warehouse, approximately two feet away. He took a drink of water and returned to the cylinder. As he attempted to open the valve on the hose to fill the cylinder more quickly, a large cloud of propane gas escaped, either from the nozzle of, or from a leak in, the hose. Simultaneously, Matthews heard a clicking noise from the water cooler and a flash fire erupted, engulfing and injuring him. At trial, Matthews presented expert testimony that, as the water cooler switched on automatically to chill more water, it emitted a spark capable of igniting the propane gas.

Regulations of the Louisiana Department of Public Safety Liquid Petroleum Gas Commission require that cylinders of propane be filled a minimum of ten feet from any building. Matthews was unaware of this requirement, although he had been employed by Amoco to deliver propane for fifteen years, and had filled propane cylinders on Ashland's premises for more than four years, Matthews had never received formal training in the proper delivery of propane. He passed a state licensing exam when first hired by Amoco, but the state examiner gave him the answers during the course of the examination.

Ashland did not require Matthews to fill the cylinders in any particular location. The cylinders weighed only 33⅓ pounds each when empty and approximately 75 pounds when filled. Matthews could have easily moved the empty cylinders away from the warehouse, although he would have found it more difficult to move full cylinders back to the loading dock. Ashland argues that Matthews might have required that the cylinders be left in a place at least ten feet from the warehouse, but Matthews contends that he was both a salesman and deliveryman and that such a requirement would have antagonized his customer.

---

1. *Boeing Company v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

Matthews contends that Ashland was negligent in placing the cylinders to be filled adjacent to the electric water cooler that was capable of igniting escaped propane. Alternatively, Matthews contends that the juxtaposition of cylinders and the water cooler created an ultrahazardous condition and that Ashland should be subject to strict liability for the injuries he suffered. Finally, Matthews contends that Ashland should have posted signs warning of the danger.

In our earlier opinion reversing summary judgment,[2] we explained at length Louisiana's law of negligence, under La.Civ.C. art. 2316, and its law of strict liability, under La.Civ.C. arts. 2317 and 2322, as construed by the then recent Louisiana Supreme Court decision in *Entrevia v. Hood.*[3] We found that a plaintiff who seeks to impose liability on the basis either of negligence or strict liability must prove that the harm he suffered resulted from an unreasonable risk created by the defendant's conduct or equipment.[4]

The ultimate determination of the reasonableness or unreasonableness of the defendant's actions, however, requires two subsidiary determinations. The judge must decide, " 'from the same standpoint as would a legislator regulating the matter,' " whether the risk and the gravity of the harm created are of such magnitude that they outweigh the social utility of the defendant's conduct.[5] To decide questions of social utility, the judge is required "to consider the particular case in terms of moral, social, and economic considerations."[6] If the judge finds that the risk created by the defendant is not socially justified, then the defendant's conduct comes within reach of the liability provisions of the Louisiana Civil Code and it is up to the trier of fact to determine whether there was an "unreasonable risk of harm in the particularized situation presented for decision."[7]

In directing a verdict for Ashland, the trial judge held that no reasonable trier of fact could find that Ashland was negligent, that it maintained defective premises, or that its premises posed an unreasonable risk of harm that could justify imposing liability for Matthews's injuries. Ashland maintained, in the judge's words, "nothing more than what you might call a plain vanilla warehouse," not a storage area for ultrahazardous materials.

The trial court weighed the risk and gravity of the harm against the social and economic utility of Ashland's activities. From the evidence adduced at trial, he found the use of propane fuel to power forklifts in warehouses such as Ashland's to have great utility. He found that it was "most reasonable," and by implication, socially and economically useful, to allow a warehouse operator such as Ashland to rely on the purported superior knowledge and skill of the propane deliverer to take the necessary precautions to fill the tanks properly and under safe conditions. He noted that Matthews could easily have moved the empty cylinders away from the loading dock. The trial court concluded that, although the gravity of the possible harm was great, the risk in these circumstances was miniscule, especially because the fire would not have occurred in the absence of an intervening cause, such as the hole in the hose of the delivery truck. Finally, the trial judge stated that it was irrelevant to his decision whether a reasonable juror would or would not find that the source of the spark was the water cooler.

Independent of these conclusions, the trial court held that no reasonable trier of fact could find that Matthews was not contributorily negligent and, therefore, Matthews was barred from recovery under the

**2.** *Matthews v. Ashland Chemical, Inc.,* 703 F.2d 921 (5th Cir.1983) (*Matthews I*).

**3.** 427 So.2d 1146 (La.1983).

**4.** *Matthews I,* 703 F.2d at 924 (quoting *Entrevia v. Hood,* 427 So.2d at 1149).

**5.** *Id.*

**6.** *Id.*

**7.** *Id.*

applicable Louisiana law, which, at that time, made contributory negligence a bar to recovery on the basis of negligence. The judge made no finding with regard to the defense of assumption of risk. On appeal, Matthews argues that contributory negligence is not a valid defense in this action. Because we do not base our affirmance on contributory negligence, we express no opinion concerning whether the plaintiff's negligence was or was not a bar to recovery in Louisiana strict liability cases before the adoption of comparative negligence.[8]

On appeal, Matthews raises the following issues: (1) whether it was proper for the trial court to grant Ashland's motion for a directed verdict on the issues of strict liability and negligence; (2) whether the trial court committed reversible error by refusing to admit into evidence a fire-investigation report made at Ashland's warehouse on the day of the fire; and (3) whether the trial court committed reversible error by refusing to permit Matthews' expert witness to testify about the applicability of various state and national safety standards to Ashland's warehouse, and about whether the conditions at Ashland's warehouse were ultrahazardous.

## II.

■ That summary judgment was improper did not preclude a directed verdict. As we stated in *Nunez v. Superior Oil Co.:*[9]

> Once all the evidence was before the court, however, the judge's decision on a motion for a directed verdict was governed by a different standard. No longer was the question simply whether there were disputed issues that might affect

the result. Instead the trial judge was entitled to weigh the evidence to determine whether it sufficed to support a verdict. "[T]he reversal of summary judgment does not foreclose the right and imperative duty of the District Judge to test the case against the actual evidence adduced at every stage of the trial. Nor is it a forecast that on remand the case must go to the jury. That depends upon the actual proof made and such proof may fall way short."[10]

The standard we apply, in reviewing the trial court's directed verdict, is whether "the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict...."[11]

Matthews argues that the trial judge erred in granting the defendant a directed verdict because the judge did not acknowledge that, under Louisiana law, the juxtaposition of two objects, each of which is not hazardous alone, may nevertheless result in a hazardous situation that warrants strict liability. In support of this, Matthews cites *Lang v. Prince,*[12] a case in which a utility pole was erected in the middle of a highway shoulder, creating a hazardous obstruction that led to the death of two automobile passengers. That case, however, is inapposite. It was decided on the basis of negligence in installing the pole, not on strict liability.

■ Recently, in *Perkins v. F.I.E. Corp.,*[13] we summarized Louisiana's jurisprudence regarding liability for premises where ultrahazardous activities occur. An activity is not ultrahazardous unless: (1) it relates to land or other immovables; (2) it directly caused the injury, and the defend-

---

**8.** *Bell v. Jet Wheel Blast,* 755 F.2d 1146, 1148 (5th Cir.1985); *Bell v. Jet Wheel Blast,* 462 So.2d 166 (La.1985) (responding to certified question by Fifth Circuit); *Dorry v. Lafleur,* 399 So.2d 559, 560–61 (La.1981).

**9.** 644 F.2d 534 (5th Cir.1981).

**10.** *Id.* at 535 (quoting *Braniff v. Jackson Ave.— Gretna Ferry, Inc.,* 280 F.2d 523, 529 (5th Cir. 1960). *See also Gleason v. Title Guarantee Co.,*

317 F.2d 56, 58 (5th Cir.1963); 5 J. Moore & J. Lucas, Moore's Federal Practice ¶ 50.03[4], at 50–38 to 50–39 & n. 3 (1985).

**11.** *Boeing v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969).

**12.** 447 So.2d 1112 (La.App. 1st Cir.1984).

**13.** 762 F.2d 1250 (5th Cir.1985).

ant was engaged directly in the injury-producing activity; and (3) the substandard conduct of a third party or the victim was not a necessary contributing cause of the injury,[14] for, as both this court and the Louisiana Supreme Court have observed, an ultrahazardous activity " 'can cause injury to others, even when conducted with the greatest prudence and care.' "[15] Ashland's premises and conduct do not and could not, as a matter of law, be condemned for deficiencies in these regards.

■ Placing empty metal cylinders near a water cooler in itself creates no risk of harm. Ashland simply placed an order with a firm having both the equipment and the expertise to deliver a product. It never requested, directed, or instructed Matthews to fill the cylinders at the place on the loading dock where it left the cylinders to be filled. Matthews, a state licensed handler of propane gas, himself chose the place where he would fill the cylinders and his choice violated state safety regulations. In filling the cylinders, Matthews either connected the hose improperly or he used a defective hose; otherwise, no gas would have escaped and no fire would have occurred. The hose and the propane truck were solely in Matthews's custody before, during, and after the accident. These facts are relevant and important, not to show contributory negligence, but to demonstrate the reasonableness of Ashland's conduct in placing the cylinders near the water cooler and leaving all safety precautions to Matthews.

As the Louisiana Supreme Court stated in *Entrevia*, to recover under articles 2317 or 2322 on a theory of strict liability, the plaintiff must prove "that the risk from which his damage resulted posed an unreasonable risk of harm...."[16] The owner or occupier of the premises "cannot be held responsible for all injuries resulting from any risk posed by his building, only those

caused by an unreasonable risk of harm to others."[17] We agree with the district court that Ashland's placement of the cylinders did not create an unreasonable risk of harm in these circumstances, nor could any reasonable juror have found that it did.

None of the national safety codes that Matthews sought to introduce at trials require a contrary conclusion. The National Fire Protection Association Code and the National Electric Code both prohibit the operation of nonexplosion proof electrical motors within three to five feet of the place where propane gas is being transferred. As Matthews' own expert witness testified on cross-examination, these code provisions did not apply to Ashland unless it specified that the propane cylinders be filled in a designated indoor area. This Ashland never did. It was Matthews who engaged in the hazardous activity regulated by these codes and who chose to fill the tanks in a location that violated their requirements.

As an alternative, Matthews argues that Ashland had a duty to warn him of the unreasonable risk of harm presented by its premises. In *Kent v. Gulf States Utilities,*[18] the Louisiana Supreme Court discussed the duty to warn as it applies to strict liability and compared these duties with negligence standards. Although both negligence and strict liability require proof that an unreasonable risk of harm was created, only negligence requires proof that the defendant knew or should have known of that risk.[19] In the strict liability context, the defendant's knowledge of the risk is presumed because "the mere fact of the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented.... [T]he owner accordingly will be held liable for failing to take steps to prevent injury resulting because

---

**14.** *Id.* at 1266–68.

**15.** *Id.* at 1268 (quoting *Kent v. Gulf States Utilities Co.,* 418 So.2d 493, 498 (La.1982)).

**16.** 427 So.2d at 1149.

**17.** *Id.*

**18.** 418 So.2d 493 (La.1982).

**19.** *Id.* at 497.

the thing in custody presented an unreasonable risk of injury to another." [20]

▮ *Kent* does not impose on the owner of property an absolute duty to warn of all risks attendant to use of his property, but only of those risks that are unreasonable. The district court cannot be faulted for concluding that the social and economic disutility of requiring Ashland to warn in these circumstances would be "staggering." On the facts of this case, the most that these warning signs might state would be absurd: "Danger: if you are violating state regulations and conducting a hazardous activity in this area, be careful. There may be hazards of which you and we are not aware."

Finally, Matthews argues that Ashland is under a duty to warn foreseeable users of potential defects in its premises. The logic in this proposition is strained: whether premises are defective or potentially defective turns on the single question that echoes throughout this case: do the premises create an unreasonable risk of harm? The potential defect can weigh no heavier in the balance against social utility than the actual defect, if indeed any distinction may be drawn at all.

We, therefore, affirm the district court's conclusion: no reasonable trier of fact could find that Ashland's premises posed an unreasonable risk of harm that was the legal cause of Matthews' injury. *A fortiori,* the jury could not find the foreseeability of injury necessary to impose liability on Ashland for negligence.

### III.

Matthews also challenges three evidentiary rulings of the trial court, asserting that the court improperly excluded: (a) the fire report made by a Westwego fire officer; (b) national standards promulgated by the National Fire Protection Association; and (c) testimony of Matthews' expert on whether the national codes applied to Ashland and whether Ashland's premises were hazardous and unreasonably dangerous. His argument is that, had this evidence been admitted, there would have been a basis for a jury verdict in his favor.

### A.

▮ Fed.R.Evid. 803(8)(C) makes admissible "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." [21]

The fire report was written on the day of the fire by Fire Officer Webb, then chief fire investigator of the Westwego Fire Department. Matthews sought to introduce the report into evidence because it stated that the cause of the fire was "loading butane in tank [and] spark from motor of water cooler set butane afire." At trial Matthews did not call Webb as a witness, but called Fire Officer Green, who had been present at the investigation but did not make the report. Webb had moved to Virginia, but Matthews presented no evidence that Webb was unavailable as a witness or for deposition.

Although the court allowed Green to testify about conditions at Ashland's warehouse on the day the report was made, it excluded the fire report itself from evidence on the ground that the court had "no idea what Mr. Webb's qualifications are ... the report is based on inconclusive investigation, and its possible prejudice far outweighs its probative value."

The Advisory Committee notes to Rule 803(8)(C) state that the trial judge may take the following factors into account in his assessment of whether an evaluative report by a public official is trustworthy: (1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems with the making of the report. In reviewing the application of these factors by trial courts, an appellate court should

---

**20.** *Id.* (emphasis deleted) (footnote omitted).

**21.** Fed.R.Evid. 803(8)(C).

not rely merely on the title of the official or official body making the report, but must look to additional considerations that indicate the special skill or expertise of the official or official body who made that report.[22] If the sources of information or other circumstances indicate a lack of trustworthiness, as Professors Saltzburg and Redden state in their Federal Rules of Evidence Manual, it may be excluded.[23]

Before making his evidentiary ruling on the fire report, the trial court questioned Green about Webb's investigation. The answers to those questions revealed that Webb spent two hours at the premises investigating the fire but conducted no additional investigation. Green did not know the extent of Webb's inquiry or the basis of Webb's opinion about the water cooler. Webb did not disassemble or look inside the water cooler, and Green testified that he did not know whether Webb investigated other potential sources of ignition, although he knew that Webb had ruled out some alternative ignition sources, such as smoking. The record does not show any evidence of Webb's special skill and expertise other than the fact that he was the chief fire investigator for the fire department. The record gives us no basis to conclude that the trial judge abused his discretion by refusing to admit the fire report.[24]

■ Even if we were to rule that the judge improperly excluded the fire report, however, we fail to discern how Matthews was prejudiced thereby. Both in the trial court's opinion and in our judgment, no reasonable trier of fact could have found that Ashland's premises posed an unreasonable risk of harm that was the legal cause of Matthews' injuries, even assuming that a spark from the motor of the water cooler ignited the propane. The trial

court's ruling, therefore, did not affect a substantial right of Matthews.[25]

## B.

To show that conditions at Ashland's warehouse were unreasonably hazardous, Matthews sought to introduce and to have his expert testify about sections of the National Fire Protection Association's Code, the National Electric Code, and the American National Standard Specifications for Accident Prevention Signs (ANSSAPS). The court admitted portions of, and allowed testimony about, some of these codes, but excluded other sections and prohibited testimony about their applicability to Ashland. Matthews argues that the trial court should have admitted fire code standards 4030 and 4060 and should not have prohibited Matthews' expert from testifying whether, under these standards, Ashland's premises were unreasonably dangerous. Matthews contends that this was reversible error.

■ Standard 4030, in its entirety, states "containers shall be filled only by the owner or upon his authorization." In view of the fact that Ashland admittedly authorized Matthews to fill the cylinders, we fail to see how the exclusion of this standard was prejudicial to Matthews' case. Therefore, we find no reversible error.[26]

Matthews did attempt to ask his expert "who's responsible" for filling the cylinders under the fire code. This question goes well beyond testimony about the requirements of standard 4030. It was within the trial court's discretion to disallow the question on the ground that it required the witness to state a conclusion of law about legal responsibility for the accident.[27] If Matthews intended to ask the expert his

---

**22.** *See, e.g., Smith v. Ithaca Corp.,* 612 F.2d 215, 220–21 (5th Cir.1980); *Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir.1978).

**23.** S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 579 (3d ed. 1982).

**24.** *Cf. Baker v. Elcona Homes Corp.,* 588 F.2d 551, 558 (6th Cir.1978).

**25.** *See* Fed.R.Evid. 103(a).

**26.** *See* Fed.R.Evid. 103(a).

**27.** *See Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983).

opinion about something other than legal responsibility, he was free to rephrase the question.

 Matthews also objects to the exclusion of Fire Code Standard 4060 which lists sources of ignition that, if they are within fifteen feet, must be shut off during the transfer of propane. The trial court held that, whatever the expert's opinion, the standards were not applicable to Ashland because the text made them applicable only to the transferor, Amoco. We find nothing in the portions of the standards made a part of the record or in counsel's briefs to indicate that this interpretation of the standard, hence the ruling, was in error.

Matthews also argues that the trial judge precluded his expert from "fully explaining" even the standards that were admitted into evidence. The expert testified that the National Electric Code and the ANSSAPS required Ashland to post appropriate signs and take appropriate precautions only if Ashland required that the propane cylinders be filled inside the warehouse. Since there is no evidence that Ashland required Matthews to fill the cylinders in any particular location, we find no error in the district court's refusal to allow the expert to assert, at a different point in his testimony, that these standards did apply to Ashland.

Finally, Matthews contends that his expert should have been allowed to state his opinion on whether Ashland's premises were ultrahazardous or unreasonably dangerous. To understand why the trial judge did not allow the expert to offer this opinion, it is essential to consider the phrasing of Matthews' question. Spanning five pages in the record, it was an all-inclusive hypothetical question that assumed every fact relevant, and some irrelevant, to the case and that ultimately asked for the expert's conclusions concerning "what happened on May 16th, 1979, and what the origin and the cause of the fire was?"

Ashland objected that such a broad, all-inclusive question called for the expert to voice legal opinions on the case, such as the proximate cause of the injuries.

We agree with the trial judge that Matthews was asking his expert to tell the jury what result to reach after having been told all of the facts possibly relevant to the case. As we stated in *Owen v. Kerr-McGee Corp.*,[28] "Rule 704 ... does not open the door to all opinions. The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give legal conclusions."[29] This is what Matthews was attempting, and we, therefore, find no error in the judge's refusal to allow the expert to answer this question.

Therefore, we find no error in the evidentiary rulings that would affect the correctness of the trial court's verdict.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

**28.** 698 F.2d 236 (5th Cir.1983).

**29.** *Id.* at 240.