# United States Court of Appeals for the Fifth Circuit

_____

No. 23-30779

_____

First United Pentecostal Church,

*Plaintiff—Appellee*,

*versus*

Church Mutual Insurance Company,

*Defendant—Appellant*.

United States Court of Appeals
Fifth Circuit

**FILED**

October 17, 2024

Lyle W. Cayce
Clerk

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 2:21-CV-4014

_____

Before Dennis, Willett, and Duncan, *Circuit Judges*.

Don R. Willett, *Circuit Judge*:

This is a hurricane-damage dispute between First United Pentecostal Church and its insurer, Church Mutual Insurance Company (CM), over damages sustained from Hurricanes Laura and Delta in 2020. First United says CM's handling of its claim breached the insurance contract and various Louisiana insurance statutes. The district court agreed and, following a bench trial, awarded damages plus statutory penalties, attorney fees, and costs. CM appealed. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

No. 23-30779

I

First United Pentecostal Church is located in DeQuincy, Louisiana. In 2020, two hurricanes—Laura (Category 4) and Delta (Category 2)—made landfall in Louisiana six weeks apart, following a similar path.[1] Church Mutual Insurance Company insured the church property, which included: the main sanctuary or New Church, the Old Church, the T.D. Cardwell Family Life Center, and the bus barn. Below is a 2017 image of the buildings.



The insurance policy limits for each building are: (1) $2,750,000 for the main sanctuary or New Church, (2) $1,360,000 for the Old Church, (3)

_____

[1] Prior to Hurricanes Laura and Delta in 2020, First United suffered damage from a 2017 tornado. Because of the tornado damage, some disputes arose during the litigation as to what damage was preexisting. When the loss from the two hurricanes was reported, litigation regarding the tornado claim was pending.

$720,000 for the T.D. Cardwell Family Life Center, and (4) $60,000 for the bus barn. Except for the bus barn, which has a $5,000 deductible, the policy sets a 2% deductible.

Hurricane Laura made landfall on August 27, 2020, and First United submitted a claim on September 7. CM did not adjust the claim before Hurricane Delta hit six weeks later on October 9, however, because the desk adjuster failed to schedule an inspection. CM finally sent an inspector, Tony Bunn, to inspect the property on October 12.

After the inspection, Bunn submitted a reserve report and photos, in which he reported that there was significant damage to the roof of the Old Church that warranted replacement, and that there was wind and water damage to both the interior and exterior of the New Church. Of note, the roof of the New Church had signs of separated roofing panels, damage at the seams, displacement of insulation, and the cross on the steeple was displaced. Bunn's report specified that there had been no advance request at that time. As to whether an expert would be needed, the report stated that "an expert may be warranted to further inspect the bowed wall (metal siding) on the southeast corner" of the Family Life Center to "advise if storm related or not."

On October 15, shortly after Bunn's inspection, CM promised to send First United a $25,000 advance but, for unexplained reasons, never did. CM's notes from that same day show that it was still "awaiting the[] inspection report and estimate of loss" and that it had engaged an engineer because it had "some questions on the metal roofed buildings." And CM's notes from October 19 show that it did not have an estimate at that point because the desk adjuster asked Bunn "to get his estimate uploaded for the undisputed and known damages right away so we can pay the ACV [actual

cash value] of those to the insured while we await the engineer inspection and report. He stated that he agreed and would do so."

A note from CM's desk adjuster from November 5 indicates that it heard from the engineer that "the roof panels are lifted on the main building" and they would most likely need to be replaced. On November 20, Bunn recommended that CM make an undisputed payment of $169,592.87 to First United. CM did not do so.

CM finally received the engineer's full report on December 3. CM then asked Bunn to review the report and submit an estimate of damages. Bunn submitted a report on January 4, 2021, that concluded the loss was below the deductible for two of the buildings, the bus barn and New Church, and there was no damage to the Family Life Center. Based on these reports, CM determined the damages were $166,090.81, and made a payment of that amount on January 14.

After this payment, the parties continued to communicate. CM's claims notes mention a conversation between Bunn and the pastor on February 5 about roofing and carpet and that on March 4 Bunn relayed an update from First United to CM. After the update, CM noted it would "issue the recoverable depreciation owed per the certificate of completion." It then issued a payment of $25,741.47. CM's two payments together totaled $191,832.28. The church spent all these funds on repairs. The parties don't appear to have communicated after CM made the second payment.

Then, on November 18, 2021, First United filed this suit, alleging that CM had underpaid on its hurricane claims, that the funds paid were inadequate to cover the cost of repairs, and that CM had failed to pay the undisputed amount and make a written settlement offer within 30 days of receipt of satisfactory proof of loss. First United pleaded two causes of action: (1) breach of insurance contract and (2) violation of Louisiana Revised

No. 23-30779

Statutes §§ 22:1892 and 22:1973, which require an insurer to make a written offer to settle any property-damage claim and pay the amount of any claim due to the insured within 30 days of receipt of satisfactory proof of loss. First United also sought penalties and attorney fees.

First United retained a public adjuster, Kermith Sonnier, from Integrity Claims Consultants, LLC, to create an estimate of the loss. The estimate, dated February 10, 2022, totals $1,332,957.59. First United provided this estimate to CM with its initial disclosures.

There was a three-day bench trial in August 2023,[2] and both sides presented multiple witnesses.[3] After First United rested, CM moved for a directed verdict/judgment as a matter of law, which the district court denied. At the close of evidence, CM renewed its motion, and the district court denied it again.

In its findings of fact and conclusions of law, the district court concluded: (1) CM adjusted First United's Claim in bad faith; (2) CM failed to make timely payments regarding the claim; (3) CM's handling of the claim was arbitrary and capricious in violation of Louisiana Revised Statute

---

[2] During trial, CM withdrew any defense it had as to preexisting damage from the 2017 tornado, and First United withdrew its claim as to the bus barn.

[3] Lynn Renlund testified as the designated corporate representative for CM. Robert Wright was accepted as an expert in structural and forensic engineering and testified for First United about what damages were caused by Hurricanes Laura and Delta. Carlton Jackson, the pastor for First United, testified for First United. Kermith Sonnier, a public adjuster, was accepted as an expert in public adjusting and construction. He testified about the damages to the property for First United. Lori Cox was accepted as an expert in structural and forensic engineering and testified about damage to the property for CM. Bobby Millican prepared the bid and the contract for making repairs to the church. He testified for First United by deposition. Steven Lott is the public adjuster who inspected and took photographs of the property for the 2017 tornado and inspected and provided a damage estimate for the 2020 hurricanes. He testified by deposition.

No. 23-30779

§ 22:1892, so First United was entitled to its unpaid losses, statutory penalties, attorney fees and costs; and (4) Sonnier's estimate is a credible adjustment (with certain reductions). The district court found that the total unpaid loss was $1,475,157.45, but with the reductions for error and non-coverage items, it was $1,101,122.87. After further subtracting the prior payments ($191,832.28) and adding penalties ($646,477.58) and attorney fees ($518,070.80), the district court awarded First United a total of $2,073,838.96.

First United then moved to alter or amend the judgment because the district court had inadvertently awarded penalties and attorney fees twice on CM's pre-trial payments, pre-judgment interest needed to be eliminated on the penalties and attorney fees award, and the judgment needed to reflect that pre-judgment interest on policy damages should run from the date of the breach of the insurance contract rather than the date of judicial demand. The district court granted that motion and entered an amended judgment of $2,052,335.09.[4]

CM moved for a new trial and for judgment as a matter of law. The district court denied the motion.

CM appealed.

II

There is diversity jurisdiction under 28 U.S.C. § 1332(a), as First United is a citizen of Louisiana, and CM is a citizen of Wisconsin. And as

---

[4] The district court changed the policy damages to $909,290.59, the penalties to $550,561.43, the attorney fees to $486,617, and added pre-judgment interest in the amount of $105,865.73. For each building, the totals were as follows: New Church ($767,087.28), Old Church ($722,795.71), and T.D. Caldwell Family Life Center ($81,874.46). After adding these numbers together, the district court subtracted the deductibles ($96,600.00) to arrive at the total unpaid loss figure.

this is an appeal of a final judgment, we have jurisdiction over the appeal under 28 U.S.C. § 1291.

After a bench trial, we review legal issues de novo and findings of fact for clear error.[5] A factual finding is clearly erroneous "if it is without substantial evidence to support it, the court misinterpreted the effect of the evidence, or this court is convinced that the findings are against the preponderance of credible testimony."[6] If "the district court's account of the evidence is plausible in light of the record viewed in its entirety," we "may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently."[7]

A few additional standards merit mention. We review a district court's decision to admit or exclude expert testimony for abuse of discretion,[8] same for a district court's decision to grant or deny a new-trial motion.[9] As for a district court's denial of a motion for a directed verdict/judgment as a matter of law, both parties contend the same abuse of discretion standard applies. For this proposition, they cite *Robinson v. Bump*,[10] which in turn cites *Ellis v. Chevron U.S.A., Inc.*[11] But *Ellis* does not say that abuse of discretion review is appropriate for these motions; rather, it

---

[5] *Luwisch v. Am. Marine Corp.*, 956 F.3d 320, 326 (5th Cir. 2020).

[6] *French v. Allstate Indem. Co.*, 637 F.3d 571, 577 (5th Cir. 2011) (quoting *Becker v. Tidewater, Inc.*, 586 F.3d 358, 365 (5th Cir. 2009)).

[7] *Env't Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 515 (5th Cir. 2016) (quoting *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 431 (5th Cir. 2014)).

[8] *Kim v. Am. Honda Motor Co., Inc.*, 86 F.4th 150, 158–59 (5th Cir. 2023).

[9] *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019).

[10] 894 F.2d 758, 761 (5th Cir. 1990).

[11] 650 F.2d 94, 96–97 (5th Cir. 1981).

says that a motion for a new trial should be reviewed for abuse of discretion.[12] Recent Fifth Circuit cases make clear that "[w]e review de novo a district court's denial of a motion for judgment as a matter of law."[13]

## III

CM asserts the district court committed several errors: (A) failing to disqualify Sonnier; (B) accepting First United's estimate, which was based on Sonnier's estimate; (C) finding that CM's conduct was arbitrary and capricious and thus awarding bad-faith penalties, attorney fees, and costs to First United; (D) calculating penalties based on the total amount due; and (E) denying CM's motion for a directed verdict/judgment as a matter of law and motion for a post-judgment relief. We discuss each in turn.

## A

At trial, Kermith Sonnier was offered as an expert in "adjusting and general contract construction."[14] CM objected and sought to exclude him, citing *AMW Sports v. State Farm*,[15] where Sonnier had been excluded from giving an opinion because of the methodology he employed. In that case, Sonnier prepared a two-page report opining that the proof of loss that was submitted was correct and in accordance with the policy, so it should have been timely paid by the insurer.[16] The magistrate judge in *AMW Sports* determined "the methodology he used to support [his opinion was] fatally

---

[12] *Id.* at 97.

[13] *May v. Miss. Dept. of Corr.*, 531 Fed. App'x 464, 469 (5th Cir. 2013); *see also, e.g.*, *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 411 (5th Cir. 2013); *Kim*, 86 F.4th at 159.

[14] CM did not file a *Daubert* motion in limine; it only objected at trial.

[15] 2012 WL 39380 (M.D. La. Jan. 9, 2012).

[16] *Id.* at *1.

flawed" because he "essentially reached his ultimate opinion by ignoring the insured's . . . business records,"[17] and it had not been "shown that Sonnier's methodology is generally accepted in the insurance industry to determine whether to pay a substantial business or commercial loss claim when the insured has invoices and receipts which can be compared to what is listed in the Proof of Loss."[18]

CM contended at trial that Sonnier's methodology was equivalently flawed here because he said he hadn't reviewed all the invoices. The district court distinguished the holding in *AMW* in two ways: (1) Sonnier was not asked to determine whether a claim should be paid here, rather, he was asked "to do an adjusting report and give an opinion," and (2) he used a different methodology, Xactimate, to create an estimate. First United also points out that Sonnier inspected the property, met with the pastor, reviewed photographs, and consulted with the engineer. In the end, Sonnier submitted a 500-page Xactimate report that was accompanied by a one-page narrative cover report.

CM now argues on appeal that the district court erred by not excluding Sonnier, his report, and his estimate because his methodology was flawed. Under Federal Rule of Evidence 702, an expert may testify "if the proponent demonstrates to the court that it is more likely than not that:"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

---

[17] *Id.* at *2.

[18] *Id.* at *3.

No. 23-30779

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[19]

CM's only argument about why Sonnier should be excluded regards his methodology, as called into question by the *AMW* case. But as the district court pointed out, Sonnier was asked to accomplish a different task in that case and did not use Xactimate there. Here, Sonnier used Xactimate, which he testified is the industry standard for the preparation of estimate. This testimony was unrebutted. District courts have "broad discretion" to determine the admissibility of expert testimony, and this court "will not find error unless the ruling is manifestly erroneous."[20] Given the differences between Sonnier's tasks and methodology in the two cases, the district court did not commit manifest error in overruling CM's objection.

B

The district court relied on Sonnier's estimate of the loss to determine what damages CM owed to First United. On appeal, CM asserts it was error to: (1) rely on Sonnier's estimate because he used pricing as of May 2023 in violation of the policy; and (2) accept Sonnier's Xactimate estimate as "credible."

1

CM contends that the district court should not have relied on Sonnier's report because the insurance policy is clear that pricing from the time of the loss, not a later date, should be used. It frames the district court's

---

[19] FED. R. EVID. 702.

[20] *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 623 (5th Cir. 2018) (quoting *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004)).

reliance on Sonnier's estimate (with its 2023 pricing) as an interpretation of the insurance policy provision, and thus a question of law that we can review de novo.

We agree with First United, however, that CM has failed to properly preserve this issue for our review. For starters, CM did not object on this ground either when Sonnier's report was admitted or when Sonnier testified about his report. CM has therefore failed to preserve the argument that Sonnier's report or testimony should be excluded based on the pricing he used.[21] While it is less clear whether CM's failure to preserve its objection to Sonnier's report and testimony on the pricing grounds means that CM cannot now argue that the district court erred by *accepting* the pricing in the report, we also agree with First United that CM failed to preserve this argument.

To answer this second question, we must first address whether the district court's decision to adopt the May 2023 pricing was an interpretation of the policy at all. Under Louisiana law, an "insurance policy is a contract between the parties and should be construed using the general rules of contractual interpretation set forth in the Louisiana Civil Code."[22] Courts must determine "the common intent, words and phrases in an insurance policy," and construe them "using their plain, ordinary and generally prevailing meaning."[23] The district court's findings of fact and conclusions

---

[21] *See* FED. R. EVID. 103(a). This would be true even if CM's motion in limine made the pricing argument as to Sonnier because a party whose motion in limine is denied must still object when the error he sought to prevent is about to occur at trial. *Collins v. Wayne Corp.*, 621 F.2d 777, 783 (1980).

[22] *Cadwallader v. Allstate Ins. Co.*, 2002-1637 (La. 6/27/03), 848 So.2d 577, 580.

[23] *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 5/22/07), 956 So.2d 583, 589.

of law do not address how the insurance policy should be interpreted—it makes no mention of what pricing should be used. By adopting Sonnier's pricing to determine the damages award, the district court implicitly interpreted the policy to allow pricing from three years after the loss to be used for the damages calculation. Interpretation of the insurance policy is a question of law that we review de novo.[24]

However, even though the district court was faced with multiple estimates[25] and policy language that specified the period from which prices should come from, CM never argued at trial that the district court should not adopt Sonnier's estimate because it used pricing from the wrong period in violation of the policy. "A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal."[26] "We do not ordinarily consider issues that are forfeited because they are raised for the first time on appeal . . . ."[27] This is true even for legal issues. We have recognized a narrow exception for "purely legal matter[s]" if "failure to consider the issue will result in a miscarriage of justice,"[28] but

---

[24] *Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263 (5th Cir. 2005).

[25] The estimate First United experts Lori Cox and Robert Wright worked on states that it "is prepared using generally prevailing prices of building and material and labor in your area," but it does not specify the period those prices are from. Sonnier's estimate included a spreadsheet that listed the prices as of May 2023 when the estimate was created, but because the prices decreased by August, Sonnier redid the estimate. However, the district court thought the pricing should match the date of the report in May.

[26] *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

[27] *Id.* at 398.

[28] *Id.*

CM has not argued that a miscarriage of justice would result here if we do not review this issue. Accordingly, CM failed to preserve the issue for appeal.

2

CM also objects to the district court's acceptance of Sonnier's Xactimate estimate as "credible." Sonnier's Xactimate estimate and cover report were admitted into evidence without objection. CM argues on appeal that because it demonstrated multiple patent faults in [Sonnier's] opinions and estimate, then the district court clearly erred by "adopting that report and awarding damages, penalties and attorneys fees based on the flawed estimate." As First United points out, CM has "not appealed the amount of the trial court's policy damage award nor pointed out any specific item of damage which the trial court may have improperly awarded," making it "unclear what error Church Mutual is claiming the trial court made with respect to Mr. Sonnier's and Mr. Wright's reports or what relief it is seeking." Additionally, the references in its brief to Sonnier's errors relate to aspects of the estimate that the district court had already determined were incorrect and deducted from its damages calculation.

The district court found Sonnier's Xactimate estimate to be "a credible adjustment, with [certain] reductions." CM seems to think that a credible estimate would not contain any errors and would not need any reductions, but it references no authority for that proposition. Given that the district court made reductions and CM is not specifically arguing that additional reductions need to be made, we cannot say that the district court committed any error.

No. 23-30779

## C

CM next contends that the district court erred by finding that its conduct was arbitrary and capricious and without probable cause, and also by awarding bad faith penalties, attorney fees, and costs on that basis. We agree.

Louisiana Revised Statute § 22:1892 requires that insurers "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured or any party in interest."[29] If the insurer fails to do so and "such failure is found to be arbitrary, capricious, or without probable cause," the insurer is subject "to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due . . . as well as reasonable attorney fees and costs."[30] Because we conclude that CM's failure to pay was not arbitrary, capricious, or without probable cause, First United cannot prevail under § 22:1892.

"Whether an insured's conduct is arbitrary or capricious 'depends on the facts known to the insurer at the time of its action. . . . Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error.'"[31] "[P]enalties should be imposed only when the facts 'negate probable cause for nonpayment.'"[32]

"The phrase arbitrary, capricious, or without probable cause is synonymous with vexatious, and a vexatious refusal to pay means unjustified,

---

[29] La. Stat. Ann. § 22:1892(A)(1). *See also Guillory v. Lee*, 2009-0075 (La. 6/26/09), 16 So.3d 1104, 1126.

[30] La. Stat. Ann. § 22:1892(B)(1).

[31] *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 759 F.3d 427, 436 (5th Cir. 2014) (quoting *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 635 (5th Cir. 2013)).

[32] *Louisiana Bag Co., Inc. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So.2d 1104, 1114 (internal quotation omitted).

without reasonable or probable cause or excuse. Both phrases describe an insurer whose willful refusal of a claim is not based on a good-faith defense."[33] The Louisiana Supreme Court has explained that "an insurer need not tender payment for amounts that are reasonably in dispute," but "'there can be *no good reason*'—or no probable cause—for withholding an undisputed amount."[34]

CM argues that "[w]hile Renlund testified that the *first payment* was made more than thirty days after proof of loss, this is not actually supported by the claims file offered by First United," because there was uncertainty over the extent of the claim until the engineering report was received and reviewed by the adjuster. The claims notes corroborate that there was some uncertainty as to whether the roof would need to be replaced on the main building. On November 5, 2020, a note states that "the engineer said that the roof panels are lifted on the main building" and they would most likely need to be replaced, but CM had not received the engineer's full report at that point. Bunn then recommended that CM make an undisputed payment of $169,592.87 to First United on November 20, 2020. But CM didn't receive the engineer's full report until December 3, 2020.

The engineer's report gave a fuller view of the damage to the church. It indicated that some damage was consistent with wind damage from the storm but that other damage was preexisting and unrelated to the hurricane. Once it received the report, CM asked Bunn to review the report and submit an estimate of damages. On January 4, 2021, Bunn submitted his report and

---

[33] *Id.* (internal citations and quotation marks omitted).

[34] *Id.* (emphasis in original) (quoting *Hammett v. Fire Ass'n of Phila.*, 160 So. 302, 304–05 (La. 1935)).

No. 23-30779

CM determined the damages were $166,090.81. CM made a payment of that amount on January 14, 2021.

"[W]hen there are substantial, reasonable and legitimate questions as to the extent of an insurer's liability or an insured's loss, failure to pay within the statutory time period is not arbitrary, capricious or without probable cause."[35] Here, there were outstanding questions about the extent of the loss, and an engineer was hired to assess the damage. Bunn changed his estimate based on the information in the engineer's report, which indicates that there were reasonable and legitimate questions about the extent of CM's liability, particularly the extent of the loss as to the roof.

The district court failed to grapple with the fact that there were "reasonable and legitimate question[s] as to the extent and causation of a claim."[36] This was clear error. Because "reasonable doubts exist[ed]" as to the full extent of the insurer's liability, "bad faith should not be inferred from an insurer's failure to pay within the statutory time limits."[37] Further, the statute is "penal in nature and should be strictly construed,"[38] which further counsels in favor of reversal here.

Accordingly, we hold that the district court clearly erred in awarding statutory penalties and attorney fees and costs.

_____

[35] *Id.*

[36] *Id.* (quoting *Reed v. State Farm Auto. Ins. Co.*, 03–0107 (La. 10/21/03), 857 So.2d 1012, 1021).

[37] *Reed*, 857 So.2d at 1021.

[38] *Baack v. McIntosh*, 2020-01054 (La. 6/30/21), 333 So.3d 1206, 1217.

16

D

Next, CM argues that the district court erred in how it calculated penalties and attorney fees. Because we hold that CM did not act arbitrarily, capriciously, or without probable cause, we need not reach this issue.

E

Finally, CM contends—in a single paragraph in its brief—that the district court erred by denying its motion for a directed verdict or judgment as a matter of law, as well as its motion for post-judgment relief. The only basis for its argument is "for all the reasons presented herein, which are incorporated into this argument as to the error presented" and "for the reasons presented *supra.*"

Federal Rule of Appellate Procedure 28(a)(8)(A) requires an appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies." CM fails to meet this standard. It does not explain the legal standard for a directed verdict, judgment as a matter of law, or a new trial, nor does CM explain which of its previously made arguments apply under those legal standards. "A party forfeits an argument . . . by failing to adequately brief the argument on appeal."[39] Thus, CM has forfeited its arguments that the district court erred by failing to grant a directed verdict, a judgment as a matter of law, or a new trial.

---

[39] *Rollins*, 8 F.4th at 397.

No. 23-30779

## IV

Summing up: We AFFIRM the district court's denial of CM's motion to exclude Sonnier as an expert, and the district court's denial of CM's motions for a directed verdict/judgment as a matter of law and for post-judgment relief, as well as the district court's use of Sonnier's estimate to calculate damages. We REVERSE the district court's imposition of statutory penalties, attorney fees, and costs. This case is REMANDED for further proceedings consistent with this opinion.