# United States Court of Appeals for the Fifth Circuit

---

No. 24-30744

---

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2026

Lyle W. Cayce
Clerk

Raja Talluri; Gayathri Talluri,

*Plaintiffs—Appellants*,

*versus*

AIG Property Casualty Company,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-377

---

Before Barksdale, Willett, and Duncan, *Circuit Judges*.

Per Curiam:[*]

In this diversity action concerning hurricane-caused damages to the home of Raja and Gayathri Talluri, AIG Property Casualty Company (AIG) prevailed in a jury trial. At issue is whether the district court reversibly erred in excluding evidence of the Talluris': appraisal-award amount; and appraiser's position regarding the value of the damages. AFFIRMED.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30744

I.

The Talluris, doctors residing in Thibodaux, Louisiana, have a 25,000 square-foot home with imported décor, such as flooring from Nepal and roofing tile from Colombia. Their homeowners' policy with AIG included over $9 million in coverage.

The hurricane damaged their home on 29 August 2021; they reported a claim with AIG three days later. In response, AIG's independent adjuster, White, contacted the Talluris to schedule an inspection of the property. Before the scheduled inspection, they hired Precision Construction & Roofing (Precision) to tarp their entire roof for $86,404.

Through White's inspection of the property on 24 September, he noted damage to the interior and exterior of the home. His 26 September report to AIG estimated restoration costs "[n]orth of $7,000,000"; but, he recommended AIG withhold payment until an engineer and building consultant assisted with the claim.

Three days after White's inspection, the Talluris sent AIG a demand letter for: the policy limits; roof-tarping costs; and, based on a bid by Precision, funds to replace their roof. On 1 October, AIG's primary adjuster, Eklund, denied the full claim, but paid $106,404 for the costs for tarping and "immediate needs".

The same day, Eklund requested H&A Consulting International (H&A) to investigate the property. H&A, along with J.S. Held, L.L.C. (AIG's building consultant), and Eklund, conducted AIG's second inspection on 5 October. Eklund determined it necessary to replace the roof with material of "like kind and quality". He reviewed Precision's roofing bid, which proposed replacing the Santa Fe tile with Ludowici tile—a difference of $8,000 more per roofing square. (We take judicial notice that a roofing square is 100 square feet. *See* Fed. R. Evid. 201(b)(2).)

2

No. 24-30744

On 13 October, Eklund submitted a reservation-of-rights letter to the Talluris' counsel, based on the 5 October inspection and Precision's bid. He also requested additional information concerning the property.

Following Eklund's letter, H&A on 18 October sent him a "Forensic Engineering Report", based on the 5 October inspection. It concluded that much of the damage to the property was consistent with damage caused by the hurricane, but other damage was not.

After the H&A report, J.S. Held—based on the 5 October inspection—provided Eklund with an estimate of $359,479.21 for various repairs. Seven days later, AIG paid the Talluris $309,479.21 (the estimate less the policy's $50,000 deductible). AIG also maintained its objection to the Talluris' demand for policy limits and roofing costs.

The Talluris on 11 November sent AIG a report—prepared by ATA Loss Consulting (ATA)—with an estimate of $6,713,922.27 in damages (ATA estimate). The Talluris also included an engineering report by Snowden of Structural Alliance. J.S. Held reviewed the ATA estimate and revised its own estimate to $777,901.69. Based on this revised estimate, AIG on 6 December paid $445,304.44 to the Talluris. AIG's roofing contractor, CMR Construction and Roofing Company, also reviewed the ATA estimate and revised its own estimate for roof repairs. This led AIG on 4 January 2022 to pay an additional $366,710.78 to the Talluris.

Although AIG made multiple payments to the Talluris, it disputed parts of the ATA estimate. It primarily took issue with Precision's roofing bid that the ATA estimate incorporated. (At trial, Eklund described replacing Santa Fe tile with Ludowici as "going from a Camry to a Rolls Royce".) AIG also disputed damage caused by "exterior water intrusion in . . . the ballroom". Ultimately, AIG's disputing the ATA estimate led to the action at hand.

No. 24-30744

On 16 February, AIG, disputing the ATA estimate in part, invoked an appraisal provision in the policy to address the remaining approximate $5.5 million in claimed damages. This provision allowed either party to invoke appraisal, with each allowed to appoint an appraiser to determine the value of the damages. If the appraisers reached an impasse, the provision allowed them to select an umpire to render a decision.

AIG appointed Critch as its appraiser; the Talluris, Irwin. Following Irwin's inspecting the property on 15 April 2022, he prepared a report that included: his valuation of the damages to the property; discrepancies he found in AIG's estimates; and 74 supporting documents. Critch did not inspect the property.

The two appraisers could not reach an agreement on the amount of damages; therefore, they appointed Siebarth as umpire. Approximately eight months later, on 13 October 2022, she rendered a $16,126,268 award.

In response to the award, AIG paid approximately $10 million on 9 November 2022. The payment excluded costs for: undisputed damages AIG had already paid; and additional living expenses (ALE) and guaranteed rebuilding costs (GRC)—amounts owed under the policy only when incurred. Eventually, in full satisfaction of the appraisal-award amount, AIG paid the ALE and GRC when the Talluris incurred them.

This diversity action was filed on 30 January 2023 under 28 U.S.C. § 1332(a)(1), with claims under Louisiana law for breach of insurance contract and bad faith. LA. REV. STAT. § 22:1892 (requiring insurer pay claims within 30 days of satisfactory proof of loss). Following discovery, cross-motions for summary judgment were filed.

AIG contended no genuine dispute of material fact existed that it: (1) did not owe ALE because they were not yet incurred; (2) rendered payment for all pre-appraisal payments within the statutory deadline after receiving

4

satisfactory proof of loss; and (3) paid the appraisal-award amount within the statutory deadline. It based its second contention on the assertion that it did not receive satisfactory proof of loss until it reviewed the estimates and reports from its adjusters, and it made payment when such proof was received. The Talluris asserted AIG possessed sufficient information by 24 September 2021—the date of AIG's adjuster White's inspection—to act on the claim, but instead arbitrarily delayed and denied all payments in violation of Louisiana Revised Statute § 22:1892.

The district court granted AIG partial summary judgment, concluding no genuine dispute of material fact existed that AIG: did not owe payment for ALE until incurred; and timely rendered all other payments, including the appraisal-award amount, except one. For that one payment, the court denied summary judgment regarding AIG's paying less than the full amount reflected in the 11 November 2021 ATA estimate (approximately $6.7 million).

Accordingly, the court resolved the ALE dispute and all disputes surrounding *all* payments made by AIG (pre-and-post-appraisal process, including the appraisal-award amount), *except* AIG's denying full payment of the ATA estimate. Therefore, the *only* issue for trial was whether AIG's denying full payment of the ATA estimate constituted bad faith. (On appeal, the Talluris do not contest the summary-judgment ruling.)

Pre-trial, AIG moved *in limine* to exclude, *inter alia*, evidence of the appraisal-award amount and Irwin's (the Talluris' appraiser) estimate of the value of damages to the property. After the Talluris responded, the court granted the motion for both the award amount and this testimonial evidence. It concluded Irwin's "position"—that he observed a higher valuation of damages than the ATA estimate accounted for (Irwin's position)—and the appraisal-award amount were irrelevant under Federal Rules of Evidence 401

(defining relevant evidence) and 402 (barring admissibility of irrelevant evidence). The court concluded that, in the light of its summary judgment, the evidence would not assist the jury in determining whether AIG acted in bad faith by withholding payment of the full amount of the ATA estimate. Alternatively, the court concluded Irwin's position and the appraisal-award amount failed Federal Rule of Evidence 403's balancing test because their probative value was substantially outweighed by a danger of unfair prejudice, wasting time, confusing the issues, and misleading the jury.

Accordingly, the court at trial excluded proffered testimony from Irwin about the *value* of the damages. On the other hand, it permitted him to testify about their *extent*, including that he observed "[q]uite a bit more" damage than included in the ATA estimate. He also testified about damage photographed by ATA and concluded all of it was caused by the hurricane. Moreover, he testified extensively about his observations of the damage, including about photographs he took of the damage. He criticized the estimate by AIG's building consultant, J.S. Held (relied on by AIG to contest the ATA estimate), by stating it: "grossly underestimated" the time needed to repair the home; "obscenely grossly underestimated" the cost of installing a new chandelier; and included a "beyond unreasonable" estimate of the cost of permits and fees.

Raja Talluri testified about the cost of repairs. Also, the Talluris called Siebarth, the umpire, to provide expert testimony about the appraisal and the appraisal process for the Talluris' claim. The jury also heard testimony from: Eklund (AIG's primary adjuster); Blumberg (AIG's building-consultant expert); and Harb (AIG's expert engineer).

Notably, the Talluris did not call any witnesses from ATA or Precision (the Talluris' roofing contractor). This prevented the jury from hearing the rationale for the ATA estimate and its incorporated Precision-roofing bid.

Moreover, the Talluris did not call Snowden (who sent Eklund the engineering report) or anyone else from Structural Alliance (Snowden's employer).

The jury returned a verdict for AIG, with the jury's answer to question one of the verdict form being that the Talluris failed to prove by a preponderance of the evidence: that the insurer (AIG) received satisfactory proof of loss; and that it failed to pay within 30 days (first two elements of Louisiana bad faith). Accordingly, and pursuant to the form's instructions, the jury did not decide whether denial of payment was arbitrary, capricious, or without probable cause (third element).

## II.

As stated, only AIG's denying full payment of the ATA estimate was in issue at trial. This being a diversity action, "substantive state law must be applied . . . , but state procedural law yields to the applicable Federal Rules". *Klocke v. Watson*, 936 F.3d 240, 244 (5th Cir. 2019).

The Talluris contend: the district court abused its discretion (by excluding evidence of the appraisal-award amount and Irwin's position regarding the value of damages); and the error was not harmless. They assert the excluded evidence, if admitted, would have led the jury to find AIG acted arbitrarily.

AIG counters that the court correctly concluded the appraisal-award amount and Irwin's position were irrelevant under Federal Rule of Evidence 401. AIG contends in the alternative that the court's excluding the evidence under Rule 403 provides a basis for affirming the judgment. Finally, regarding the appraisal-award amount, AIG asserts the Talluris failed to preserve the issue for appeal because the court's stating it excluded the evidence "at this time" was not definitive within the meaning of Federal Rule of Evidence 103 (requiring preservation of claim of error).

As noted, Louisiana's bad-faith statute requires insurers "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest". LA. REV. STAT. § 22:1892(A)(1). The burden of proof rests with the claimant to establish: "the insurer received a satisfactory proof of loss"; "the insurer failed to pay the claim within the applicable statutory period"; "and . . . the insurer's failure to pay was arbitrary and capricious". *Boudreaux v. State Farm Mut. Auto. Ins. Co.*, 896 So.2d 230, 233 (La. Ct. App. 2005) (citation omitted).

"Satisfactory proof of loss, as required for an insured to obtain penalties from an insurer, is that which is sufficient to fully apprise the insurer of the claim and extent of the damage." *Aghighi v. La. Citizens Prop. Ins. Corp.*, 119 So.3d 930, 934 (La. Ct. App. 2013). For the third element, "an insurer must pay any undisputed amount over which reasonable minds could not differ", and "[a]ny insurer who fails to pay said undisputed amount has acted in a manner that is, by definition, arbitrary, capricious or without probable cause". *Dupree v. Lafayette Ins. Co.*, 51 So.3d 673, 698–99 (La. 2010) (citation omitted). "Whether an insured's conduct is arbitrary or capricious depends on the facts known to the insurer at the time of its action . . . . Because the question is essentially a factual issue, the trial court's finding should not be disturbed on appeal absent manifest error." *First United Pentecostal Church v. Church Mut. Ins. Co.*, 119 F.4th 417, 427 (5th Cir. 2024) (citation omitted).

## A.

The Talluris preserved their contentions regarding exclusion of the appraisal-award amount. Our court does not require a formal offer of evidence to preserve error. *E.g.*, *United States v. Ballis*, 28 F.3d 1399, 1406 (5th Cir. 1994). Instead, to preserve evidence for review, the trial court must

be aware of what the party seeks to introduce and why, and the record must be adequate to allow appellate review of the ruling. *Id.* "Once the court rules definitively on the record—either before or at trial—a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b).

The district court's ruling on the admissibility *vel non* of the appraisal-award amount makes it apparent the court understood what the Talluris sought to introduce and why. The court stated it was "not persuaded that evidence of the full appraisal award amount would be relevant to the jury's task". An adequate appellate record also exists for our review. Further, the court excluded the appraisal-award amount by a definitive ruling. It concluded its order by stating "the motion is GRANTED".

### B.

Our court "review[s] exclusions of evidence for abuse of discretion". *Conn. Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 487 (5th Cir. 2017) (citation omitted). An evidentiary ruling "based on an erroneous view of the law or a clearly erroneous assessment of the evidence" constitutes an abuse of discretion. *Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 399 (5th Cir. 2022) (citation omitted). If our court rules an abuse of discretion occurred, it next "review[s] the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party". *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citation omitted). Re-stated, under Federal Rule of Evidence 103, "[a] party may claim error in a ruling to . . . exclude evidence only if the error affects a substantial right of the party". Fed. R. Evid. 103(a). "The party asserting error bears the burden of proving he was prejudiced by the exclusion of the evidence." *Cruz v. Cervantez*, 96 F.4th 806, 814 (5th Cir. 2024).

Erroneously excluded evidence constitutes harmless error if it is of minimal probative value. *E.g.*, *Garcia v. Gloor*, 618 F.2d 264, 271–72 (5th Cir. 1980); *Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1310 (5th Cir. 1985). Moreover, if erroneously excluded evidence is cumulative, the court's error is harmless. *E.g.*, *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 306–08 (5th Cir. 1978). Assuming *arguendo* that the court abused its discretion, the Talluris' challenge fails under the harmless-error test.

Turning first to the appraisal-award amount, the jury was tasked with determining "[w]hether [AIG]'s conduct [was] arbitrary or capricious [based] on the facts known to [it] at the time of its action". *First United Pentecostal Church*, 119 F.4th at 427 (citation omitted). The appraisal-award amount was unlikely to assist the jury in that regard because AIG did not know that amount when, approximately eight months earlier, it denied full payment of the ATA estimate. More importantly, and as stated, the jury found the Talluris failed to prove the first and second elements of bad faith—that AIG (1) obtained satisfactory proof of loss and (2) made payments more than 30 days thereafter. The Talluris contend the appraisal-award amount, if admitted, would prove the third element—whether AIG's failure to pay was arbitrary, capricious or without probable cause. The jury, however, was not required to reach the third element. Accordingly, such evidence had minimal probative value. *See Garcia*, 618 F.2d at 271–72 (holding excluded "reports and determinations" harmless because "after weighing . . . evidence actually admitted, neither would have added appreciable weight to [plaintiff's] contention"); *Matthews*, 770 F.2d at 1310 (holding excluded fire report in negligence and strict-liability action harmless because "no reasonable trier of fact could have found [defendant]'s premises posed an unreasonable risk of harm . . . even assuming that a spark from the motor of the water cooler ignited the propane").

No. 24-30744

As for Irwin's (the Talluris' appraiser and key witness) position, he testified about central issues to the matter, including his: observation of more damages than reflected in the ATA report; disagreement with the work of AIG's experts; and work on the matter. The jury considered this evidence and still concluded AIG made payment within 30 days of receiving satisfactory proof of loss. The Talluris contend Irwin's excluded testimony concerned the *value* of the damages and not just the *scope*. Irwin's excluded testimony is, however, like the evidence in *Coughlin*—cumulative and therefore harmless. *See Coughlin*, 571 F.2d at 306–08 (holding deposition testimony erroneously excluded as hearsay harmless error because substance of depositions matched other admissible testimony).

Accordingly, assuming the court erred in denying evidence of the appraisal-award amount and Irwin's position on the value of damages, such error was harmless. (Therefore, we need not reach whether the court reversibly erred under Rule 403.)

III.

For the foregoing reasons, the judgment is AFFIRMED.